## LONG v. STATE OF INDIANA.

[No. 24,116.    Filed November 24, 1922.]

1. BIGAMY.—*Elements.*—*Intent.*—Though it is a general rule in criminal law that criminal intent is essential to make one guilty of a crime, in the offense of bigamy, where the statute (§2350 Burns 1914, Acts 1905 p. 584, §454) makes it criminal to do an act under particular circumstances, the party doing that act is criminally responsible, regardless of any criminal intent.    p. 528.

2. BIGAMY.—*Elements.*—*Intent.*—*Religious Belief.*—Criminal intent is not necessary in a prosecution for bigamy, where defendant, knowing that he was married and that his wife was living, contracted a second marriage, even though impelled thereto by his religious belief; the law being superior to any professed religious doctrines or beliefs.    p. 528.

3. BIGAMY.—*Evidence.*—*Admissibility.*—*Mistakes of Law.*—*Mistakes of Fact.*—*Religious Beliefs.*—In a prosecution for bigamy, evidence of mistakes in fact are admissible, but not of mistakes in law, nor can the accused prove a religious belief contrary to law.    p. 529.

4. BIGAMY.—*Mitigation of Punishment.*—*Evidence.*—*Religious Belief.*—*Admissibility.*—In a prosecution for bigamy, evidence that accused was impelled to contract the unlawful marriage by a religious belief is not admissible in mitigation of punishment.    p. 529.

5. BIGAMY.—*Dissolution of Prior Marriage.*—*Burden of Proof.*—In a prosecution for bigamy, where the state proved that the prior marriage had been solemnized, it was incumbent upon defendant, and not upon the state, to prove whether such marriage had been dissolved or annulled at the time the alleged unlawful marriage was consummated.    p. 529.

6. CRIMINAL LAW.—*Appeal.*—*Harmless Error.*—*Instructions.*—In a prosecution for bigamy, error, if any, in instructions complained of by defendant is not ground for reversal, where the evidence was such that the jury could not fail to return a verdict of guilty, even though all the state's instructions had been refused, and all of defendant's tendered instructions given.    p. 530.

From Floyd Circuit Court; *John M. Paris*, Judge.

Prosecution by the State of Indiana against Willard W. Long. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Harry W. Carpenter* and *George B. McIntyre*, for appellant.

*U. S. Lesh*, Attorney-General, and *Mrs. Edward Franklin White*, for the state.

TRAVIS, J.—This is a prosecution under an indictment for bigamy under §2350 Burns 1914, Acts 1905 p. 584, §454, which indictment charges that the appellant, being married, married again, the former wife being alive and the bonds of matrimony still undissolved, and that no legal presumption had arisen of the death of his wife.

Appellant, at the age of 23 years, was married in the State of Kentucky in November, 1903, to Mary Lee Durrett, and as a result of such marriage there was born to them a daughter about three years after this marriage. Approximately all the period of his married life appellant had been engaged in mercantile pursuits, the last few years of which had been as manager of a store in Kentucky, while he had his residence in the city of New Albany, Indiana. For three years prior to the alleged crime with which he is charged, he had under his employ as such manager, Majorie McFall, the last two years of which employment she was his bookkeeper. While Marjorie was still in such employ, and on November 16, 1921, she and appellant were married. At the time of appellant's said second marriage he was of the age of 42 years and Marjorie was of the age of 19 years. Since the marriage of appellant with Mary Lee Durrett, including the time of appellant's courtship and marriage with Marjorie, they had lived continuously together as husband and wife. The second marriage was performed by a minister of the Gospel by virtue of a

marriage license issued by the clerk of the Clark Circuit Court, and return of such marriage was duly made to such clerk by the officiating minister, as provided by law. In making application for such marriage license, appellant in answer to the question, "Has such prior marriage or marriages been dissolved?", answered, "Yes;" question, "If so, how?" answer, "Death." Appellant's daughter accompanied him and Marjorie to the parsonage of the officiating minister and stood up with her father at the marriage ceremony for the marriage of appellant and Marjorie McFall. During the time that appellant and his daughter and Marjorie were away from appellant's home engaged in the second marriage, appellant's first wife, Mary Lee Durrett Long, was at appellant's home preparing the wedding repast in celebration of this second marriage of appellant, to which home the three repaired after the marriage ceremony. Appellant, in his own behalf, and his two wives, called on behalf of the state, were witnesses in the trial of the cause. It is interesting to note, in the consideration of the rejected evidence complained of, that appellant upon direct examination in his own behalf, testified as to what answer he made to a witness in the case, who, with the officers, accompanied him from the place of his arrest in Louisville, Kentucky, to New Albany, Indiana, as to why he married Marjorie McFall, and if he did not know he had violated the law, answered, "When the question was put to me in regard to the law, I said I was actuated by a higher power than the law of the land."

The trial before the court and the jury resulted in a verdict of guilty, which was followed by a judgment of imprisonment, from which appellant appeals.

Error is predicated upon the overruling of appellant's motion for a new trial, the causes for which, not waived, are: That the defendant was precluded by rulings of

the court from introducing in evidence, testimony to prove his intent and motive for marrying the second time; that the court erred in giving certain instructions to the jury; and that the verdict of the jury is not sustained by sufficient evidence and is contrary to law.

Concerning the question of intent or motive, appellant, in testifying in his own behalf, was asked upon direct examination, "Why did you marry Marjorie McFall?" Over the objection of the state, appellant's counsel offered to prove in answer to the question, that "he married Marjorie McFall for the reason that some unknown power or spirit had so directed his mind that it made him feel that it was compulsory on his part that he do it, and that he married her in good faith, believing that he was doing an act that was in compliance with the commands of a higher power." And thereupon the court sustained the objection to the question. The following question was asked appellant upon direct examination, "When you answered me a while ago that Mary Lee died on the 27th day of October, explain to the jury what you meant by that." Over the objection by counsel for the state, counsel for appellant offered to prove by the witness in answer to the question, "In explaining that his wife died on the 27th day of October, 1921, that she was not the same woman that he married, but that her spirit had departed from her body, and she was no longer the same Mary Lee Long, but that she was changed in ways and acts and not her natural being, and that her spirit had departed into another, and it was because of that spirit speaking to this defendant that caused him to marry Marjorie." Thereupon the court sustained the objection by the state to the question.

It is maintained that the answers to these two questions, as shown by the offers to prove, relate to the intent to commit the crime, and that the evidence if per-

mitted, in answer to these questions, would tend to prove the appellant committed the act with no criminal intent or motive. As a general proposition, in criminal law where there is no criminal intent there can be no guilt; but it is equally true that every man is presumed to intend the necessary and legitimate consequences of what he knowingly does; so that, in the offense of bigamy, where the statute makes it criminal to do an act under particular circumstances, the party doing that act is criminally responsible, regardless of any criminal intent. *People* v. *Spoor* (1908), 235 Ill. 230, 85 N. E. 207, 126 Am. St. 197, 14 Ann. Cas. 638; *Rice* v. *Commonwealth* (1907), 31 Ky. Law 1354, 105 S. W. 123; *State* v. *Armington* (1878), 25 Minn. 29; *State* v. *Cain* (1901), 106 La. 708, 31 So. 300.

Criminal intent is not necessary in a prosecution for bigamy, where the defendant, knowing that he was married, and that his wife was living, deliberately contracted a second marriage, although impelled thereto by his religious belief. The law of the land is superior to any professed doctrines or beliefs, whether religious, secular, or pagan. *United States* v. *Reynolds* (1875), 1 Utah 226; 3 R. C. L. 803; 7 C. J. 1163. In the Utah case the rejected evidence offered by the defendant pretended to show that plural marriage was a part of defendant's religion, in answer to which the court said: "This objection of the appellant is, as we conceive, based upon neither reason, justice, nor law."

In deciding the case of *United States* v. *Reynolds, supra,* upon appeal to the Supreme Court of the United States, Mr. Chief Justice Waite said in the opinion of the court: "A criminal intent is presumed to intend the necessary and legitimate consequences of what he knowingly does. Here the accused knew he had been

once married, and that his first wife was living.   He also knew that his second marriage was forbidden by law.   When therefore he married the second time, he is presumed to have intended to break the law.   And the breaking of the law is the crime.   *   *   *   It matters not that his belief was a part of his professed religion; it was still belief, and belief only." *Reynolds* v. *United States* (1878), 98 U. S. 145.

In connection with offered and rejected evidence, appellant insists that it was admissible, if for no other purpose, for the purpose of mitigating the punishment.   The statute provides different degrees of punishment, and appellant was given the maximum punishment provided thereby.   Evidence of mistakes in fact are admissible in trials for bigamy, but not of mistakes in law, or to prove a religious belief contrary to law.   The only defense reasonable to deduce from the offered evidence would be to show that the statute itself was invalid, or, as was well expressed in the opinion of *Reynolds* v. *United States, supra,* "The only defense of the accused in this case is his belief that the law ought not to have been enacted."   This kind of belief ought not to be admissible as evidence in mitigation of punishment; and it is so held.

Appellant complains that the state failed to offer any evidence to prove that the bonds of matrimony between appellant and his first wife, Mary Lee Long, had not been dissolved.   It was no part of the state's case to prove that the marriage had been dissolved or annulled.   It was enough for the state to prove that the marriage had been solemnized.   The rule of law is that it is incumbent upon the defendant to prove that such state of matrimony no longer exists because of a legal dissolution. *People* v. *Spoor, supra; Fletcher* v. *State* (1907), 169 Ind. 77, 81 N. E. 1083.

Appellant maintains that the giving of four of the instructions to the jury by the trial court, as pointed out, constituted error.    Upon a careful consideration

6.    of these four instructions and of all the instructions alleged to have been given to the jury by the trial court, in connection with the arguments by appellant in his brief, it is impossible to conceive how the jury could have been misled, and have returned any other than a verdict of guilty upon the testimony which it had to consider, when taking into consideration that appellant testified in his own behalf and admitted the marriage with Mary Lee Long, and his second marriage with Marjorie McFall, and that at the second marriage his daughter by his first wife, then a young lady, stood up with him at the ceremony, and that they then repaired to appellant's home to there partake with his first wife, Mary Lee Long, of the repast which she had prepared for the wedding feast while appellant was being joined in marriage with Marjorie, with the only excuse for such marriage that appellant did so under a spiritualistic belief, which had been so strongly condemned by the highest judicial tribunal of the land.

If the record in this case is rightly judged, when taking into consideration that the giving of the instructions objected to did not prejudice the substantial rights of the accused, it will be apparent that the statute, §2221 Burns 1914, Acts 1905 p. 584, §334, has been rightly invoked.    The whole of the evidence as transcribed in the record has been carefully read and considered, which leaves no doubt that any jury could not fail to return a verdict of guilty, even though the court had given each instruction requested by appellant, and had refused to give the instructions tendered by the state and by the court of its own motion, all of which were given over his objection.    The instructions complained of were not prejudicial to appellant, and do not constitute reversible

error. *White* v. *State* (1912), 178 Ind. 317, 99 N. E. 417; *Hay* v. *State* (1912), 178 Ind. 478, 98 N. E. 712; *Mullen* v. *State*, 191 Ind. 405, 133 N. E. 8.

From the consideration of the evidence as hereinbefore stated, it is held that the verdict is sustained by the evidence, and that it is not contrary to law.

Judgment affirmed.